

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

July 31, 1963

Major General Thomas S. Bishop      Opinion No. C- 118
Adjutant General of Texas
Camp Mabry                          Re:  Application and Interpretation
Austin, Texas                            of Article 5769b-1, V.C.S. to
                                         Texas National Guardsmen who
                                         are also public officers or
                                         employees under the facts
Dear General Bishop:                     stated.

        You have requested an opinion concerning the application
and interpretation of Article 5769b-1, Vernon's Civil Statutes,
in certain specific instances where Texas National Guardsmen who
are public officers or employees are ordered to perform military
duties.

        Article 5769b-1 provides as follows:

        "Section 1.  All officers and employees of
the State of Texas and of any county or political
subdivision thereof, including municipalities,
who shall be members of the National Guard or Of-
ficial Militia of Texas, or members of any of the
Reserve Components of the Armed Forces shall be
entitled to leave of absence from their respective
duties without loss of time or efficiency rating
or vacation time or salary on all days during which
they shall be engaged in field or coast defense train-
ing and on all days of parade or encampment, ordered
or authorized by proper authority.  (Emphasis added.)

        "Sec. 2.  All officers and employees of the
State of Texas and of any county or political sub-
division thereof, including municipalities who shall
be members of the National Guard or Official Militia
of Texas, or members of any of the Reserve Components
of the Armed Forces, shall be entitled to leave of
absence from their respective duties without loss of

-586-

time or efficiency rating or vacation time or salary on all days on which they shall be ordered by proper authority to duty with troops or field exercises, or for instruction, for not to exceed fifteen (15) days in any one calendar year.

"Sec. 3. Members of the National Guard or Official Militia of Texas, or members of any of the Reserve Components of the Armed Forces, who are in the employ of the State of Texas, who are ordered to duty by proper authority shall, when relieved from duty, be restored to the position held by them when ordered to duty.

"Sec. 4. The provisions of this Act limiting such leaves of absence with pay to fifteen (15) days in any one calendar year shall not apply to Members of the Legislature; but Members of the Legislature shall be entitled to pay on all days, without limitations as to number thereof, when they may be absent from the Session of the Legislature and engaged as above provided. Acts 1953, 53rd Leg., p. 584, ch. 227."

From the outset, it must be borne in mind that the courts of this State have consistently construed the Constitution and statutes liberally in favor of patriotic service, and are loath to penalize State employees who perform such services. The Legislature has also often evidenced its spirit and intent to encourage such military participation. Therefore any construction of such statutes which would deter or penalize such participation would not be in the overall spirit of encouraging such commendable additional service to this State. We would also point out that prior opinions of this office construing previous statutes of this nature repealed by the present statute have reflected this overall position. See Attorney General Opinions V-1062 (1950), V-1228 (1951), and WW-1477 (1962).

Reading the statute as a whole, the Legislature provided for two different types of situations: (1) special occasions of State or periods of State emergency, and (2) Annual Active Duty for Training (ANACDUTRA), generally referred to as "Summer Camp."

It would obviously be impossible to estimate the number of days that a State Employee-Guardsman would be ordered to perform necessary additional service such as contemplated by Section 1. However, the period of absence contemplated by Section 2 is not indefinite;

fifteen calendar days is the established period of required service in "Summer Camp."

Therefore, we interpret Section 1 to authorize leaves of absence on all days of special occasion such as parades, and on all days of emergency, such as Hurricane Carla, without limitation.

Section 2 is interpreted to provide for leaves of absence for a period not to exceed fifteen (15) days per calendar year for that training generally known as "Summer Camp" or Annual Active Duty for Training (ANACDUTRA). Section 4 removes any limitation as to number of days for members of the Legislature when absent from a legislative session.

Having interpreted the statute in question, your specific questions and the answers thereto are as follows:

"(1) Are the provisions of Section 1 of Article 5769b-1 applicable to National Guardsmen ordered by proper authority to participate in an official parade or other formation?"

Section 1 is applicable and there is no limitation as to number of days.

"(2) Are the provisions of Section 1, Article 5769b-1 applicable to National Guardsmen ordered to perform disaster duty along the Texas coast immediately after Hurricane Carla (coastal defense training)?"

Section 1 is applicable and there is no limitation as to number of days.

"(3) Is Section 2 of Article 5769b-1, providing for fifteen days military leave each calendar year, applicable to members of the reserve components who are ordered to perform weekend duty with troops or field exercise or for instruction even though such persons do not work on Saturday or Sunday?"

Section 2 is not applicable because it applies only to "Summer Camp." Section 1 would be applicable and there is no limitation as to number of days. We would also point out that by virtue of House Bill 86, Acts of the 58th Legislature, Article 5, Section 6a, effective August 23, 1963, all State employees except those whose employment is generally referred to as "in the public interest" are not required to

work on Saturdays, hence after the above date the question would not arise. However, as to those employees not affected by the provisions of House Bill 86, Section 1 is still applicable so there is no limit as to number of days.

"(4) With reference to annual active duty for training (summer camp), do the provisions of Section 2 of Article 5769b-1 mean fifteen consecutive days, or fifteen calendar days, or fifteen working days?"

Consistent with the intent of the Legislature, Section 2 applies as to "summer camp" and "not to exceed fifteen (15) days" means fifteen consecutive calendar days. This would, of course, prevent employees from being on leave of absence in order to be part of the "advance party" and be absent in excess of fifteen consecutive calendar days.

The letter declaring your department's interpretation and the able memorandum brief filed with this request by the Honorable Wiley W. Stem, Jr., Waco City Attorney were of valuable assistance to us, and we appreciate such excellent cooperation.

### S U M M A R Y

Article 5769b-1, Vernon's Civil Statutes, limits leaves of absence by State officers and employees who are members of the National Guard to fifteen (15) calendar days only as regards "Summer Camp"; leaves of absence for special State occasions, such as parades, and of public emergency, such as Hurricane Carla, have no such period of limitation, and such leave is authorized "on all days."

Yours very truly,

WAGGONER CARR
Attorney General

By *Paul Phy*

Paul Phy
Assistant

PP:jh:mkh

Major General Thomas S. Bishop, page 5 (C- 118 )


APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Nicholas A. Irsfeld
Joseph Trimble
Jerry Brock

APPROVED FOR THE ATTORNEY GENERAL
BY:  Stanton Stone